UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) | |
| v. | ) ) | Criminal No. 04-401 (RMC) |
| NEERAN HAKIM ZAIA, | ) ) | (related to Civil No. 09-2461 (RMC)) |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Defendant Neeran Zaia filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Dkt. # 213][1] and a Motion to Reduce Sentence Under Rule 35 [Dkt. # 217]. As explained below, the pleadings and the record conclusively demonstrate that Ms. Zaia is not entitled to the relief she seeks. Accordingly, the motions will be denied.

**I. FACTS**

A grand jury returned a thirty-two count indictment against Ms. Zaia on September 3, 2004. The indictment charged Ms. Zaia with violations of 18 U.S.C. § 371 (Conspiracy to Commit Offenses Against the United States); 8 U.S.C. § 1324(a)(2)(B)(ii) (Bringing Unauthorized Aliens to the United States for Commercial Advantage or Private Financial Gain); 8 U.S.C. § 1327 (Aiding and Abetting Certain Aliens to Enter the United States); 18 U.S.C. § 1512(b) (Tampering with a Witness by Misleading Conduct); and 18 U.S.C. §§ 2(a) & (b) (Aiding and Abetting, Causing an Act to Be Done). Superseding Indictment [Dkt. # 79].

---

[1] Ms. Zaia also filed a Supplement and a Reply in support of the § 2255 motion. *See* Def.'s Supp. [Dkt. # 216]; Reply [Dkt. # 242].

Over the course of two days, September 4 and 5, 2007, a jury was selected for trial.[2] During this two-day period, the parties also held plea negotiations. The Government first made a plea offer under Federal Rule of Criminal Procedure 11(c)(1)(C) that called for a ten-year sentence and that would require Ms. Zaia to forfeit her citizenship. Ms. Zaia discussed this with her attorney (assisted by an interpreter) and declined the offer. The Government made a second Rule 11(c)(1)(C) offer, requiring Ms. Zaia to plead to eight counts of the Superseding Indictment, called for a fifteen-year sentence, required that she waive her right to appeal, and permitted her to retain her citizenship. Plea Agreement [Dkt. # 167]. Ms. Zaia accepted this plea offer. On September 6, 2007, the Court conducted a lengthy Rule 11 colloquy, ordered a presentence investigation report, and set the sentencing date. On November 19, 2007, the Court formally accepted the Plea Agreement and imposed a sentence of fifteen years as set out in the Plea Agreement. Tr. 11/19/07 at 52; Judgment [Dkt. # 185].[3]

Despite Ms. Zaia's waiver of the right to appeal, via trial counsel, Reita Pendry, Ms. Zaia filed a notice of appeal. Notice of Appeal [Dkt. # 187].[4] Appellate counsel, Edward Sussman, later moved to dismiss the appeal because he could find no non-frivolous issues to present to the Circuit. He also moved to withdraw as counsel. The Circuit granted the motion, dismissed the appeal, and issued the mandate. *See* Mandate [Dkt. # 205]. Subsequently, the Government filed a motion for downward departure under Federal Rule of Criminal Procedure 35, and the Court reduced Ms. Zaia's sentence to a total term of imprisonment of 144 months. *See* Minute Entry (Apr. 7,

---

[2] The jury was not sworn.

[3] The judgment was later amended to correct costs that Ms. Zaia was required to pay. Am. Judgment [Dkt. # 190].

[4] The Circuit designated the appeal as case number 07-3129.

2009); 2d Am. Judgment [Dkt. # 206].

Ms. Zaia now seeks a further reduction of her sentence via a motion under Federal Rule of Criminal Procedure 35 and a motion under 28 U.S.C. § 2255. The Government opposes.

## II. ANALYSIS

### A. Motion to Reduce Sentence under Rule 35

Ms. Zaia claims that she has provided substantial assistance to the Government with regard to approximately five cases and that her sentence should be reduced due to such assistance. Federal courts do not have inherent authority to modify a sentence, but may when authorized by statute. *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997). Such authority is provided by 18 U.S.C. § 3582(c). *United States v. Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997). Section 3582(c) sets forth three limited circumstances under which a district court can modify a term of imprisonment: (1) upon motion of the Director of the Bureau of Prisons for extraordinary and compelling reasons; (2) where the sentencing range has been subsequently lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o); and (3) to the extent provided by Rule 35 of the Federal Rules of Criminal Procedure. *See* 18 U.S.C. § 3582(c). Rule 35 enumerates two circumstances where a court may modify a sentence: (1) where there is a need to correct a sentence due to an arithmetical, technical, or other clear error within seven days after the imposition of the sentence; and (2) where the government files a motion seeking a sentence reduction due to a defendant's subsequent substantial assistance. Fed. R. Crim. P. 35(a) & (b).

These circumstances do not exist here. The Director of the Bureau of Prisons has not filed a motion, and the guideline range applicable to Ms. Zaia's sentence has not been lowered. Further, there was no request to modify any alleged arithmetical, technical or clear error, and the

government has not requested a sentence reduction due to substantial assistance. Without one of these necessary predicates, the Court has no authority to reduce Ms. Zaia's sentence. Ms. Zaia's motion to reduce her sentence [Dkt. # 217] must be denied.

### B. Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

As the basis for her motion under Section 2255, Ms. Zaia claims ineffective assistance of trial and appellate counsel and prosecutorial misconduct. Under Section 2255, a prisoner sentenced in federal court may move to vacate, set aside, or correct his sentence if the sentence was imposed "in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack." 28 U.S.C. § 2255. A district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). Ms. Zaia's motion does not require a hearing because the record conclusively shows that she is not entitled to relief.

#### 1. Ineffective Assistance of Counsel

The Supreme Court has articulated two separate standards for evaluating the effectiveness of trial counsel in a criminal case. Under *United States v. Cronic*, 466 U.S. 648 (1984), courts will presume a *per se* violation of the Sixth Amendment right to counsel only "'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" *Bell v. Cone*, 535 U.S. 685, 697 (2002) (quoting *Cronic*, 466 U.S. at 659) (emphasis in original). Ms. Zaia has made no showing in support of a claim under *Cronic*.

Except in those rare circumstances where *Cronic* applies, courts evaluate claims of

ineffective assistance of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (1) showing that counsel's representation fell below an objective standard of reasonableness; and (2) demonstrating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687-88, 694) (quotation marks omitted). The burden of proof rests on the defendant to show that her lawyer made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment and that counsel's deficient performance was prejudicial." *United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). In other words, to prevail on a claim of ineffective assistance of counsel, a defendant must prove both incompetence and prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Performance of appellate counsel is measured by the same standards that apply to trial counsel. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).

A court's evaluation of an attorney's performance should be highly deferential, *i.e.*, there is a strong presumption that an attorney's conduct fell within the wide range of reasonable professional assistance. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). The fact that a particular litigation strategy failed does not mean that it had no chance of success or that counsel was ineffective by employing it. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

To set aside a guilty plea pursuant to a Section 2255 motion, a defendant "must show that the plea proceeding was tainted by a 'fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Weaver*, 265 F.3d 1074, 1077 (D.C. Cir. 2001). Further, to establish prejudice in the context of a plea proceeding, the defendant must show that there is a reasonable probability that, but for plea counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Ms. Zaia alleges that her trial counsel, Ms. Pendry, was ineffective for six reasons: (1) she failed to subject the prosecution to meaningful adversarial challenge by failing to challenge the prosecutors' statements regarding Ms. Zaia's past criminal activity; (2) she lacked experience in immigration law, could not provide advice regarding how the plea or sentence would effect Ms. Zaia's citizenship, and recommended the "safer" offer to preserve citizenship; (3) she failed to explain the Plea Agreement; (4) she was afraid to go to trial and was intimidated by the prosecutor; (5) she failed to file an appeal to remove five year's imprisonment from Ms. Zaia's sentence; and (6) she failed to prepare adequately for trial. Ms. Zaia also claims ineffective assistance of appellate counsel, *i.e.*, that Mr. Sussman moved to dismiss the appeal because he "did not have sufficient understanding of the case." Mot. to Vacate, Set Aside or Correct Sentence [Dkt. # 213] at 8.

**(a) Allegation that Trial Counsel Failed to Present Meaningful Challenge**

First, Ms. Zaia asserts that Ms. Pendry failed to subject the prosecution to meaningful challenge by not objecting to the prosecutor's representations to the Court when he accused Ms. Zaia of "past illegal activities" that he "had heard" earlier. Def.'s Supp. at 4. Ms. Zaia refers to the

Government's allegation, as part of the first plea offer, that Ms. Zaia made false statements when she applied for naturalization many years before. But the first plea offer was never accepted by Ms. Zaia or the Court. Ms. Zaia repeatedly indicated that she wanted to plead guilty, but she disagreed with and would not admit to the proffer in support of the first plea offer. Ms. Zaia, her counsel, and the Court engaged in a long colloquy:

> Court: The only decision right now . . .
>
> Defendant: Yes.
>
> Court: Is whether you want to go to trial.
>
> Defendant: No.
>
> Court: Well then your only alternative is to accept the plea.
>
> Defendant: Yes.
>
> Court: (to the interpreter) Would you translate for me?
>
> Defendant: I plead guilty Judge. Yes, I agree with that, but to a couple of things if we can. And I respect [the prosecutor] Mr. Jim [Oliver], you help me please. Couple of things. I don't like [to] hear about citizenship. Fine you want to take it from me, take it. But I don't want to say I lie[d] when I get to citizenship. A lot of things I sign it does not belong to me. I put my hand to God. I try to respect you. You tired from me three years, everybody tired.
>
> Court: Okay, I'm not. No, no, there's no question of being tired. The question is that you have Constitutional rights. If you are willing to enter a plea of guilty, I will take your plea of guilty. If you want to go to trial, we will go to trial, but we have to make that decision today.

Tr. 9/4/07 at 9-10. The Court excused the prosecutor from the courtroom and continued to engage Ms. Zaia in conversation regarding her ability to admit truthfully the facts alleged in the proffer in support of the first plea offer. Ms. Zaia continually equivocated about her ability to admit to those facts. At one point she stated, "Believe me Judge, I'm going to stay in jail, I'm guilty. But to be

-7-

honest with you, I do not have nothing to do with all of these things." *Id*. at 13. Ms. Pendry expressed her concern that "when we get to the proffer that . . . she will not admit that she is guilty as recited in the proffer." *Id*. at 19. The Court explained to Ms. Zaia that she would have to admit to the truth of the factual proffer, and Ms. Zaia continued to equivocate about her ability to do that:

> Court: Well, I have to be able to on the record [and] describe the crimes that you would be pleading guilty to and have you agree that those are the facts.
>
> Defendant: Judge, you want me say yes, I'm going to say yes.
>
> Court: No.
>
> Defendant: Yes.
>
> Court: You have to say yes if its true.
>
> Defendant: Because its not true.

*Id*. at 22–23. After more discussion, the Court told Ms. Zaia, "I can't take a plea where you're telling me you're going to lie to me." *Id*. at 26. Finally, the Court brought the prosecutor back into the courtroom and indicated that she could not accept a guilty plea from Ms. Zaia under the terms of the first offer. The Court explained:

> We have had a lengthy conversation here about whether or not Ms. Zaia can enter a plea of guilty and acknowledge the truthfulness of the factual proffer particularly as it relates to J-1, the infant, and L-1, the person previously convicted of an aggravated felony. She has told me that those facts are not correct, but that she is willing to enter a plea to it just to avoid a trial because . . . if she goes to trial [it] would lead to a sentence of such duration. I don't think I can accept a plea in which she says yes she did that when she's told me on the record under seal that those are not accurate facts. And I don't know a way around it. So I guess we don't have anything and we have to go to trial.

*Id*. at 37–38. Thus, there was no reason for trial counsel to challenge the allegation that Ms. Zaia

made false statements when applying for citizenship because Ms. Zaia rejected the first plea offer.[5]

**(b) Allegation that Trial Counsel Lacked Necessary Knowledge Regarding Immigration Law**

Second, Ms. Zaia claims that Ms. Pendry did not have the knowledge or experience to advise her on how her immigration status could be affected by a plea and that she recommended the "safer" alternative, to accept the fifteen- year sentence and retain citizenship. This claim is a red herring. Ms. Zaia was a naturalized citizen of the United States and had been at the time of her plea for twenty years. Because she was a citizen, her immigration status would not be implicated by any plea — unless the terms of the plea agreement expressly specified otherwise. The Government's first plea offer required Ms. Zaia to agree to be denaturalized and consent to deportation. *See* Opp'n [Dkt. # 239], Ex. 1 (First Plea Offer). Because Ms. Zaia would not admit to various facts in the proffer in support of the first plea offer, the Court would not accept a plea to the first plea offer. Tr. 9/4/2007 at 38. Accordingly, the first offer plea became unavailable to Ms. Zaia, and deportation became a non-issue. Ms. Pendry did not need any expertise in immigration law to explain to Ms. Zaia that the first plea offer required her to renounce her citizenship, and when Ms. Zaia refused to admit the facts in support of the first plea offer, the issue of denaturalization and subsequent deportation became moot. Even if Ms. Pendry lacked expertise in immigration matters, Ms. Zaia cannot show that she was prejudiced in any way since she did not accept the first plea offer.[6]

---

[5] Note that it was Ms. Zaia herself who asked trial counsel to inquire of the Government whether the Government would offer a ten-year plea deal if Ms. Zaia gave up her citizenship. Opp'n [Dkt. # 239], Ex. 2 ("Pendry Decl.") ¶ 8. Although trial counsel disagreed with this approach, she spoke with Government counsel who then made the first plea offer. *Id*.

[6] Ms. Pendry, in fact, is a very experienced criminal defense attorney, including in the areas of criminal smuggling and immigration law. Pendry Decl. ¶ 7. Ms. Zaia has withdrawn her claim that Ms. Pendry "admitted she lacked requisite experience." *See* Reply [Dkt. # 242] at 3 n.2.

Further, Ms. Pendry could not have recommended that Ms. Zaia accept the "safer" alternative of pleading guilty to a term of fifteen years, because the plea offers were not alternatives that were available at the same time. The second plea offer was not made until after the first plea offer was no longer available.

Moreover, when Ms. Zaia pled guilty to the second plea offer, she indicated that she had the advice and counsel of Ms. Pendry and that she was satisfied that her attorney had given her good advice:

> Court: Have you had the advice and counsel of Ms. Pendry on whether to enter a plea?
>
> Defendant: Yeah, she told me.
>
> Court: Yes, and have you been satisfied with her advice and counsel?
>
> Defendant: Yeah, I guess, which is not fair, but I have to take it. I don't want to go through lot of things. I don't want to hurt my kids.
>
> Court: Okay, but have you been satisfied that Ms. Pendry has given you good advice?
>
> Defendant: She done lot of things, she tried to help me, yes.

Tr. 9/6/2007 at 18-19.

**(c) Allegation that Trial Counsel Failed to Explain the Plea**

Third, Ms. Zaia contends that Ms. Pendry failed to explain the plea. This allegation is soundly contradicted by the record. Ms. Zaia repeatedly indicated that she understood and agreed to the plea, which was detailed in the Plea Agreement and explained to Ms. Zaia in the Rule 11 colloquy. The representations of the defendant at a plea hearing, together with any findings made by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral

proceeding" because the defendant's "declarations in open court carry a strong presumption of verity." *United States v. Farley*, 72 F.3d 158, 164-65 (D.C. Cir. 1995).

At the plea hearing on September 6, 2007, the Government summarized the Plea Agreement, indicating that Ms. Zaia agreed to plead guilty to Count 1 of the Superseding Indictment (Conspiracy) and to seven more counts related to the smuggling of certain individual aliens: Count 6 (Basmina Shiba a/k/a alien G-1); Count 7 (Huda Zaia a/k/a alien G-2); Count 8 (Laith Bioz a/k/a alien H-1), Count 9 (Buthayna Ishaak a/k/a alien A-1); Count 10 (Sandy Jarko a/k/a A-2); Count 19 Elham Hanna a/k/a alien E-1); and Count 20 (Khalid Hermiz a/k/a alien E-2). Tr. 9/6/2007 at 3-4.

Ms. Zaia signed the Plea Agreement [Dkt. # 167], a Waiver of Trial by Jury [Dkt. # 166], and the Factual Proffer [Dkt. # 168]. The Factual Proffer set forth the details of the conspiracy, the number of aliens smuggled, the overt acts, and the facts relating to Counts 1, 7–10, and 19–20. The Proffer concluded with the statement, "I agree the above facts and allegations are true and correct,"and Ms. Zaia signed her name immediately below. Factual Proffer at 18. Ms. Zaia's acceptance of the Plea Agreement acknowledged that she had read the agreement, reviewed it with her attorney, and that she understood it and agreed to it. Plea Agreement at 9.[7]

During the plea colloquy, Ms. Zaia confirmed that she had the assistance of an interpreter at all times when negotiating the Plea Agreement. Tr. 9/6/2007 at 6. She acknowledged that she was pleading guilty to conspiracy to smuggle aliens into the United States. *Id*. at 7-8. The Court also asked Ms. Zaia, if she understood that "by entering this plea [she] would be sentenced to jail for 15 years?" and Ms. Zaia responded, "yes." *Id*. at 8. Further, the Court informed Ms. Zaia

---

[7] The Probation Officer who prepared the Presentence Investigation Report indicated that Ms. Zaia "continued to demonstrate an affirmative acceptance of responsibility during her interaction with the probation office." Presentence Investigation Report (Nov. 9, 2007) at 9.

of her rights, including her right to go to trial, to testify in her own defense, to put on witnesses, to cross-examine government witnesses, and her right to "sit quietly because you're presumed to be innocent and the government would have to prove its case beyond a reasonable doubt to 12 jurors." *Id*. at 18. Ms. Zaia indicated that she understood her rights and that she gave up those rights. *Id*.

At the plea hearing, Ms. Zaia also acknowledged the accuracy of the Factual Proffer[8] as follows:

> Court: This document says that you did associate with an alien smuggling conspiracy and did intentionally participate and tried to make the alien smuggling activity succeed. Do you agree with that?
>
> Defendant: What is succeed? (Interpreter Attieh speaking with defendant).[9]
>
> Court: You attempted to make it succeed?
>
> Defendant: Yes.
>
> Court: And the object of your activities was to make money by attempting to bring aliens into the United States? Is that true?
>
> Defendant: You want me just the question answer true?
>
> Court: I want to know if it's true that one of the purposes, it doesn't have to be the only purpose, but one of the reasons that you engaged in attempting to smuggle aliens, one of the reasons was to make money.
>
> Defendant: Judge –
>
> Court: Did you charge people money?

---

[8] The basis of the Factual Proffer was different that the one proposed in support of the first plea offer. The second Factual Proffer named different smuggled aliens.

[9] While an interpreter was available to Ms. Zaia at all court proceedings, the Court observed that Ms. Zaia regularly responded to the Court without waiting for translation, seeming to understand spoken English well.

> Defendant: I didn't charge, they give me donation, yes.
>
> Court: So you received money from people that you were attempting to smuggle?
>
> Defendant: Yeah, some people, yes, yes.
>
> Court: All right. So then you got people to be brought or sent into South America, right?
>
> Defendant: All of them yeah, from Jordan to South America through visa.
>
> Court: And then you had some people brought to Washington, D.C. by others, not you yourself, but some people came to Washington, D.C.?
>
> Defendant: Yeah, Sesi and Mirza, yes.

*Id*. at 19-21. Ms. Zaia then confirmed that the aliens she brought or attempted to bring into the United States were those named in Counts 7–10 and Counts 19–20 — Basmina Shiba, Huda Zaia, Laith Bioz, Buthayna Ishaak, Sandy Jarko, Elham Hanna, and Khalid Hermiz. *Id*. at 21. Finally, with regard to each Count 1, 7–10, and 19–20, Ms. Zaia pleaded guilty. *Id*. at 25-26.

The plea was conducted in accordance with Rule 11. There is no basis whatsoever for Ms. Zaia's claim that she was not informed of the plea.

### (d) Allegation That Trial Counsel Was Afraid to Go to Trial

Fourth, Ms. Zaia alleges that Ms. Pendry was intimidated by the prosecutors and afraid to go to trial. These allegations are controverted by the record. With regard to the first plea offer, Ms. Pendry repeatedly represented that there was not a sufficient basis to support the plea because her client would not admit guilt as recited in the proffer. She stated, "I have grave reservations about this. We're not going to get through a proffer . . . " Tr. 9/4/07 at 17. When Ms.

Zaia indicated at one point that she was going to plead guilty to the first plea offer, Ms. Pendry told the Court, "I'm just concerned that when we get to the proffer that she is, she will not admit that she is guilty as recited in the proffer." *Id*. at 19. After even more discussion Ms. Pendry noted, "I don't believe this plea would be upheld on this record. I know when the Court starts the Rule 11 inquiry we're not going to get there." *Id*. at 36. When Ms. Zaia was not able to agree with the proffer necessary to support the first plea, trial proceedings began immediately with the voir dire of the jury. *Id*. at 39. There is no evidence that Ms. Pendry was afraid to go to trial or that she was intimidated by the prosecutors. In fact, she fought against the entry of the first plea, knowing that a trial would immediately ensue. These were not the actions of an attorney who was "intimidated" or "afraid to go to trial."[10]

### (e) Allegation that Trial Counsel Failed to File an Appeal and Appellate Counsel Improperly Dismissed the Appeal

Fifth, Ms. Zaia contends that Ms. Pendry was ineffective because she failed to file an appeal. Where a defendant contends that an attorney was ineffective because he failed to file a notice of appeal, a court must determine whether counsel in fact consulted with the defendant regarding an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). If the attorney did consult with the defendant, he performed in a professionally unreasonable manner if he failed to follow the defendant's express instructions. *United States v. Taylor*, 339 F.3d 973, 978 (D.C. Cir. 2003).

Ms. Zaia waived her right to appeal her sentence in the written Plea Agreement. Plea Agreement [Dkt. # 167] at 5. The waiver was conditioned on receiving a sentence of 180 months,

---

[10] Ms. Zaia has withdrawn her claim that Ms. Pendry admitted such fear and intimidation. *See* Reply [Dkt. # 242] at 3 n.2 ("Ms. Zaia withdraws her 2255 claim that trial counsel admitted she was afraid to go to trial, admitted she lacked requisite experience and admitted she was intimidated by the prosecutor.").

the precise sentence she in fact received. *See* Judgment [Dkt. # 185] at 3. During the plea colloquy, the Court asked Ms. Zaia whether she agreed with the provision in the Plea Agreement that she would not appeal her sentence, and Ms. Zaia responded, "I know that when you plead guilty, I can't, yes." Tr. 9/6/07 at 11. Further, the Court asked Ms. Zaia if there were anything beyond what was in the Plea Agreement that anyone had promised her, and Ms. Zaia answered, "No, just only these, that's why we argument [sic] all night." *Id*. at 17. Consequently, an appeal of her sentence was precluded by the terms of the Plea Agreement.

Ms. Zaia claims that Ms. Pendry told her that she would file an appeal to reduce the sentence to ten years. Ms. Pendry indicates that this is incorrect, that Ms. Zaia is simply confused about the two plea offers discussed September 4-6, 2007. *See* Pendry Decl. ¶ 6. Ms. Pendry states, "Ms. Zaia did not ask me to file an appeal to remove five years' imprisonment from the sentence, and I did not tell Ms. Zaia that I would do so." *Id*. ¶ 4.

Even so, Ms. Pendry did file a notice of appeal. *See* Notice of Appeal [Dkt. # 187]. Attorney Edward Sussman was appointed as appellate counsel to Ms. Zaia. Mr. Sussman moved to dismiss the appeal because he could find no non-frivolous issues to present to the Circuit. Opp'n [Dkt. # 239], Ex. 7 (Motion to Dismiss Appeal). Ms. Zaia claims ineffective assistance of appellate counsel, asserting that Mr. Sussman "did not have sufficient understanding of the case." Mot. to Vacate, Set Aside or Correct Sentence [Dkt. # 213] at 8. However, the motion to dismiss the appeal reveals that Mr. Sussman understood the proceedings. The motion explained:

> [W]hile the appellant consented to the imposition of the 180 month sentence in the plea agreement, it should be noted that the presentence investigation indicated that the guidelines calculation for the offense of conviction was in a range that closely approximated the sentence imposed. The trial judge made the requisite findings regarding the

appropriateness of the sentence that had been agreed upon. Consequently, the appellant's acquiescence to the sentence, coupled with the proximity of that sentence to the guideline range, renders the sentence, as a practical matter, unappealable. Additionally, the appellant, in her written plea agreement, waived her right of appeal.

Opp'n, Ex. 7 (Motion to Dismiss Appeal) at 1-2. Ms. Zaia consented to the dismissal of her appeal. *Id*. at 2 ("Appellant has had these matters fully explained to her by her appellate counsel and her trial counsel and understands and agrees that her appeal should be dismissed."). The record simply does not support Ms. Zaia's allegation that appellate counsel failed to understand the proceedings.

### (f) Allegation that Trial Counsel Failed to Adequately Prepare for Trial

Sixth and finally, Ms. Zaia asserts that Ms. Pendry failed to adequately prepare for trial. She contends:

These deficiencies included:

- counsel was surprised by the government witness list, ill-prepared to respond to its exaggeration and unduly influenced by it in deciding trial was not an option;

- counsel failed to review pre-trial the most important evidence (the telephone calls) with Ms. Zaia directly, to obtain an accurate understanding of significant weaknesses in the government's case;

- counsel didn't interview the complainants or other key government witnesses;

- counsel did not seek an extension of the trial date, even when she was being provided with last-minute, surprise evidence by the government;

- counsel did not prepare Ms. Zaia to testify[;] and

- counsel did not develop an overall defense case-in-chief strategy.

-16-

Reply [Dkt. # 242] at 3; *see also id*. at 12-13. There was no trial in this case because Ms. Zaia accepted the second plea offer and entered a plea of guilty. Thus, even if these allegations, as to which there is no evidence, were true, Ms. Zaia has not shown ineffective assistance of counsel as she was not prejudiced by any failure to prepare for trial.

In sum, Ms. Zaia has not presented any attorney error, let alone one so serious as to deprive her of her Sixth Amendment right to counsel. *See Strickland*, 466 at 688. Nor has she demonstrated prejudice so serious as to have deprived her of a fair trial. *Id*. at 687. The record does not show a taint in the plea proceeding that "inherently result[ed] in a complete miscarriage of justice" or any omission that was "inconsistent with the rudimentary demands of fair procedure." *Weaver*, 265 F.3d at 1077. Critically, Ms. Zaia has not demonstrated that but for counsel error, she would not have pleaded guilty. *See Hill*, 474 U.S. at 59. Her ineffective assistance of counsel claim fails.

### 2. Prosecutorial Misconduct

Ms. Zaia also alleges prosecutorial misconduct — by accusations of the prosecutor that she made false statements when she applied for naturalization without evidentiary support. As explained above, Ms. Zaia refers to the allegations in the first plea offer regarding naturalization fraud. *See* Opp'n [Dkt. # 239], Ex. 1 (First Plea Offer). Even if the allegation that Ms. Zaia made false statements were not supported, because Ms. Zaia did not agree to the first plea offer and the Court refused to accept a plea to this offer, there was no prejudice to Ms. Zaia. Ms. Zaia also alleges that "[t]he 5 year additional sentence, at the cost of citizenship, was not substantiated with law." Mot. to Vacate, Set Aside, or Correct Sentence [Dkt. # 213] at 7. It is not clear what Ms. Zaia means by this vague allegation. The prosecutor is not obligated to make a plea offer at all, let alone a plea

offer on any particular terms. And it was Ms. Zaia who proposed denaturalization in exchange for a ten-year term. Pendry Decl. ¶ 8. Ms. Zaia has not shown prosecutorial misconduct.

### III. CONCLUSION

For the reasons stated above, Ms. Zaia's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Dkt. # 213] will be denied. Also, Ms. Zaia's Motion to Reduce Sentence Under Rule 35 [Dkt. # 217] will be denied. A memorializing Order accompanies this Memorandum Opinion.


Date: November 19, 2010                               /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge